IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| NEIL F. FOGARTY,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION,<br><br>Defendant, | ) | 2:19-CV-00173-MJH |

OPINION AND ORDER

Plaintiff, Neil F. Fogarty ("Fogarty"), brings the within action against Defendant, University of Pittsburgh of the Commonwealth System of Higher Education, asserting claims for discrimination under the Age Discrimination in Employment Act ("ADEA"); for retaliation under the ADEA; and for discrimination under the Pennsylvania Human Relations Act ("PHRA"). (ECF No. 1). Defendant moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The parties provided briefs, (ECF Nos. 6, 7, and 10), and the matter is now ripe for decision.

For the following reasons, the Defendant's Motion to Dismiss will be granted in part and denied in part.

## I. Background

### a. Factual Background

Fogarty is 61 years old. (ECF No. 1 at ¶5). Defendant has employed Fogarty from April or May of 1986 until the present. *Id.* at ¶ 9. Specifically, Fogarty has held the position of lecturer and/or instructor at the Defendant's Katz Graduate School of Business ("School"). *Id.* In 2014, Fogarty met with the Dean of the business school, John Delaney ("Delaney") to request

university funding for Fogarty to obtain a Ph.D. in order to change his faculty status from "professionally qualified" to "academically qualified." *Id.* at ¶¶ 10, 11. Fogarty alleges that the School had an established precedent, where the School paid the tuition for individuals to obtain their Ph.D. *Id.* During the meeting, Delaney informed Fogarty that the School would deny his request due to the "opportunity costs" of investing additional training and education resources for someone at an "advanced stage of [their] career." *Id.* at ¶ 13. In February 2014, Professor John Prescott ("Prescott"), Fogarty's immediate supervisor, again denied Fogarty's request for funding for his Ph.D. due to "the advanced stage of [Fogarty's] career, and Prescott commented that 'there are too many old men in our interest group, and they should all retire.'" *Id.* at ¶ 14.

On April 20, 2015, Fogarty emailed Prescott to apply for a recently vacated undergraduate business ethics course teaching position. *Id.* at ¶ 15. Prescott responded that Fogarty was ineligible because he did not hold a Ph.D. and because the position was not open. *Id.* at ¶ 17. Subsequently, in April 2016, Fogarty learned, through a series of emails with Prescott, that the School was far along in the process of hiring for a business ethics professor position. *Id.* at ¶¶ 18-21. Prescott advised that he "forgot" to tell Fogarty about the open position, and that one of the final candidates had a J.D., but not a Ph.D. *Id.* at ¶ 22. On April 29, 2016, Fogarty reported his communications with Prescott to Jeffrey Inman ("Inman"), the Associate Dean for Research and Faculty. *Id.* at ¶ 23. Fogarty advised Inman that he believed Prescott's conduct was based upon Fogarty's age. *Id.* at ¶ 23.

On June 3, 2016, Prescott emailed Fogarty to inform him that his class load for Fall 2016 would be twelve credits less than he had been assigned to teach during the Fall, 2015 semester. *Id.* at ¶ 24. On February 2, 2017, Fogarty complained to Professor Paul Harper ("Harper") about Prescott's failure to consider him for the business ethics position, and that Fogarty believed Prescott's conduct was due to Fogarty's age. *Id.* at ¶ 26. Prescott later told Fogarty that he had

been informed that Fogarty had spoken to Harper. *Id.* at ¶ 27. On March 15, 2017, Prescott emailed Fogarty to advise him that his teaching load and income for 2017-2018 would be reduced by fifty percent due to a "desire for greater diversity." *Id.* at ¶ 28. On May 10, 2017, Fogarty's summer term courses were reduced from four to three classes. *Id.* at ¶ 29. On June 20, 2017, Fogarty's full-time office location was assigned to a younger employee. *Id.* at ¶ 31. Fogarty was assigned a substitute office. On July 12, 2017, the Defendant had a job posting seeking teacher applicants for courses that had been removed from Fogarty's teaching schedule. *Id.* at ¶ 32. Fogarty's class load and income were further reduced in August 2017. *Id.* at ¶ 33. In October 2017, Fogarty informed Professor Suchits of the alleged discriminatory conduct. *Id.* at ¶ 33. On November 29, 2017, Fogarty received his Spring 2018 teaching schedule, which reflected a reduction from six courses to two courses. *Id.* at ¶ 35. On December 4, 2017, Fogarty was informed that he would have no teaching assignments for the 2018 Summer term. *Id.* at ¶ 36. On August 29, 2018, Fogarty was removed from his substitute office, which was then assigned to a younger graduate student. *Id.* at ¶ 38. On April 4, 2018, the School offered Fogarty three classes for the Fall 2018 to Summer 2019 academic year. *Id.* at ¶ 39. This assignment was thereafter reduced to two classes in December 2018. *Id.* The School stated that the reduction was due to the reduced number of MBA classes and the addition of full-time faculty. *Id.* at ¶ 40.

**b. Procedural History**

On January 5, 2018, Fogarty filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC"). (ECF No.1 at ¶ 4). In these filings, Fogarty asserted claims for alleged adverse actions that occurred between February 24, 2014 and December 4, 2017. On November 23, 2018, the EEOC issued a Notice of Dismissal and Right to Sue. *Id.* Fogarty filed his present

complaint on February 15, 2019, wherein, he alleges that discriminatory acts occurred February 24, 2014, April 2016, June 3, 2016, March 15, 2017, May 10, 2017, June 20, 2017, August 7, 2017, November 29, 2017, December 4, 2017, August 29, 2018, and December 2018. The Defendant has filed a Motion to Dismiss, arguing that the alleged acts from February 24, 2014, April 2016, and June 3, 2016 are time barred. Defendant also contends that Fogarty failed to exhaust his administrative remedies with regard to the acts that occurred on August 29, 2018, and in December 2018.

## II. Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will

reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

## III. Discussion

### a. Timeliness of Fogarty's Claims

Fogarty filed his charge with the EEOC on January 5, 2018. In his present complaint, he alleges that discriminatory acts occurred on February 24, 2014, in April 2016, June 3, 2016, March 15, 2017, May 10, 2017, June 20, 2017, August 7, 2017, November 29, 2017, December 4, 2017, August 29, 2018, and in December 2018. Defendant contends that any alleged adverse actions against Fogarty that occurred on or before June 3, 2016 should be dismissed as time-barred, because those alleged acts occurred more than 300 days before Fogarty filed his EEOC charge. Fogarty argues that his claims from June 3, 2016 and before are timely, because they

were part of a plan, pattern, or practice of discrimination under a "continuing violation theory," which provides an exception to the timely filing requirement.

A plaintiff seeking relief under the ADEA must first exhaust his or her administrative remedies. 29 U.S.C. § 626(d). Section 626(d) requires plaintiffs in "deferral states," such as Pennsylvania, to file charges with the state agency having authority to investigate claims of employment discrimination and with the EEOC within 300 days of the last date of alleged discrimination. 29 U.S.C. §§ 626(d)(2) & 633(b); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir.2000). The continuing violation doctrine provides that:

> [W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). In *National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the U.S. Supreme Court limited the applicability of the continuing violation doctrine, and held that "discrete discriminatory acts, such as termination, failure to promote, denial of transfer or refusal to hire, are not actionable if time barred, even when they are related to acts alleged in timely filed charges because '[e]ach [such] incident of discrimination ... constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. The *Morgan* Court further held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Thus, the continuing violation doctrine does not apply to discrete acts. The Third Circuit has stated that, in addition to those discrete acts listed in *Morgan*, other discrete acts that constitute separate actionable claims include: "wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir.2006). As

explained in *O'Connor*, "causes of action that can be brought individually expire with the applicable limitations period." *Id.* at 128.

Presently, the Complaint alleges claims for adverse actions that occurred on February 24, 2014, for a failure to train; in April 2016, for a failure to promote; and on June 3, 2016, for a failure to hire. (ECF No. 1 at ¶¶10-24). Each of these claims are based upon discrete actions, as in *Morgan* and *O'Connell*. Fogarty could have timely filed claims with the EEOC/PHRC for each of those actions, but he did not. Because Fogarty filed with the EEOC on January 5, 2018, actions that occurred more than 300 days before said filing date are untimely. Accordingly, these three claims are time barred. Therefore, Defendant's Motion to Dismiss, as regards the February 24, 2014, April 2016, and June 3, 2016, alleged adverse actions, which pre-dated June 3, 2016, will be granted. Any amendment is deemed futile.

**b. Claims that arose after the filing of the EEOC Charge Claims**

On January 5, 2018, Fogarty filed his EEOC/PHRC charge to address the following alleged incidents:

1) the May 10, 2017 reduction in Fogarty's Summer 2017 course load;
2) the August 28, 2017 reduction in Fogarty's Fall 2017 course load;
3) the November 29, 2019 reduction in Fogarty's Spring 2018 course load; and
4) the December 4, 2017 failure to hire Fogarty for the Summer 2018 term.

The EEOC issued a Notice of Dismissal and Right to Sue letter on November 23, 2018. Fogarty's present Complaint also alleges two incidents that occurred after the EEOC January 5, 2018 filing date:

1) the August 29, 2018 removal of Fogarty from his substitute office; and
2) the December 2018 reduction in Fogarty's Spring 2019 course load.

As to these post-filing claims, Defendant contends that Fogarty has failed to exhaust his administrative remedies, because these two alleged adverse actions occurred after Fogarty filed his January 5, 2018, EEOC/PHRC charges. (ECF No. 1 at ¶¶ 4, 38-39). Fogarty argues that

these two claims were within the scope of the original EEOC investigation, and therefore, they are exempt from separate EEOC/PHRC administrative exhaustion requests.

Generally, a plaintiff must exhaust administrative remedies with respect to all claims, but a court may assume jurisdiction over claims not technically exhausted if they are reasonably within the scope of the complainant's EEOC charges and would be encompassed by the EEOC investigation. *See id.* (citations omitted); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). There must be a "close nexus" between the facts alleged in the administrative charge and any newly raised claim. *See Hicks v. ABT Assocs.*, 572 F.2d 960, 967 (3d Cir. 1978); see also *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). The relevant test is whether the alleged acts in the federal lawsuit are fairly encompassed within the scope of the prior agency charge and related investigation. *Antol*, 82 F.3d at 1295 (quoting *Waiters*, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam)). In determining whether a claim is contemplated in an underlying charge, courts liberally interpret the administrative filing. *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (quoting *Hicks*, 572 F.2d at 965). The Third Circuit has held that dismissal of a discrimination claim that was not filed with the EEOC is appropriate where the claim is of a different type or category that than the claim that was filed. *See e.g. Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) (dismissing Title VII gender discrimination claims where EEOC charge addressed only age discrimination); *Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174, 178 (3d Cir. 2011) (dismissing hostile work environment claim where it was not included in EEOC failure-to-promote claim)

As regards Fogarty's August 29, 2018 claim, that he was removed from his substitute office, the question is whether or not this alleged adverse action was outside the scope of his January 5, 2018 EEOC charges and related investigation. The Defendant argues that the August 29, 2018 was outside the scope of the original EEOC charge. The EEOC claims addressed

Fogarty's claims about reduced and eliminated teaching assignments. The August 29, 2018 removal of Fogarty from his substitute office was an alleged adverse action related to his working conditions. This adverse action is of a different type and category from his job assignments. As such, the August 29, 2018 claim was not within the scope of the January 5, 2018 EEOC/PHRC charges. Thus, administrative exhaustion was necessary for the August 29, 2018 claim. As such, Fogarty's claim, regarding the August 29, 2018 office reassignment, will be dismissed for failure to exhaust administrative remedies. The Defendant's Motion to Dismiss will granted. Any amendment is deemed futile because the complaint's timeline and allegations create no plausible set of facts that would warrant amendment on the exhaustion issue.

As regards the December 2018 reduction in Fogarty's Spring 2019 course load, the Defendant argues that the December 2018 event occurred after the EEOC had completed its investigation and had issued its November 23, 2018 Notice of Dismissal and Right to Sue letter. The Third Circuit Court of Appeals has not issued a precedential opinion on the issue of administrative exhaustion requirements when independent acts occur after an administrative investigation of other charges has concluded. *See Griggs v. SEPTA*, No. CIV.A. 14-6226, 2015 WL 4476772, at *4 (E.D. Pa. July 22, 2015). However, in a non-precedential opinion, the Third Circuit has held, that a new EEOC charge is required when "a discrete act ... occur[s] after [the plaintiff] had received her right-to-sue letter from the EEO (sic) on her earlier claim." *Green v. Postmaster Gen.*, 437 F. App'x 174, 178 (3d Cir. 2011) (citing *Waiters*, 729 F.2d at 237). District courts in the Third Circuit have also found the same. *See Ryan v. Gen. Machine Prods.*, 277 F.Supp.2d 585, 594 (E.D. Pa. 2003); *Risser v. Steelton-Highspire Sch. Dist.*, No. 1:17-CV-357, 2017 WL 5625766, at *6 (M.D. Pa. Nov. 22, 2017); *Tourtellotte v. Eli Lilly & Co.*, No., 2013 WL 1628603, at *6 (E.D. Pa. Apr. 16, 2013); *Darrington v. Milton Hershey Sch.*, No. CV 18-04265, 2019 WL 1470865, at *2 (E.D. Pa. Apr. 3, 2019). Therefore, in the present case, the

December 2018 reduction in his Spring 2019 course load required EEOC administrative filing and exhaustion. Accordingly, said claim will be dismissed for failure to exhaust administrative remedies. Defendant's Motion to Dismiss will be granted. Any amendment is deemed futile because the complaint's timeline and allegations create no plausible set of facts that would warrant amendment on the exhaustion issue.

**c. Age Discrimination Claim (Counts I and III)**

Defendant contends that Fogarty has failed to sufficiently plead age discrimination claims under the ADEA or PHRA, because he does not allege that his desired teaching positions remained open or were filled by someone younger; thus, there is no inference of discrimination. Fogarty argues he has sufficiently plead a prima facie case under both the ADEA and PHRA. The Third Circuit has stated that the same standards should apply to claims under both the ADEA and PHRA. *See Kautz v. Met Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005). To establish a prima facie case for relief in an employment discrimination case, alleging a failure to hire, an applicant must establish that:

> (1) he belongs to the protected category;
> (2) he applied for and was qualified for a position for which the covered employer was seeking applicants;
> (3) despite his qualifications, he was not hired; and
> (4) after his rejection, the position remained open, or was filled in a manner giving rise to an inference of discrimination.

*Alja-Iz v. U.S. Virgin Islands Dep't of Educ.*, 626 F. App'x 44, 46 (3d Cir. 2015). In his Complaint, Fogarty alleges that he "was replaced by younger individuals and was treated less favorably than younger, less experienced and less qualified employees and job applicants." (ECF No. 1 at ¶ 47). The incidents solely at issue are as follows:1) the May 10, 2017 reduction in Fogarty's Summer 2017 course load; 2) the August 28, 2017 reduction in Fogarty's Fall 2017 course load; 3) the November 29, 2019 reduction in Fogarty's Spring 2018 course load; and 4)

the December 4, 2017 decision not to hire Fogarty for the Summer 2018 term. The Complaint does not specifically aver that these positions remained open or that a younger individual replaced Fogarty sufficient to plead a basis for an inference of discrimination. The allegations in the Complaint are general and conclusory and do not adequately support the fourth element of Fogarty's prima facie claim of age discrimination for each of the alleged adverse actions. Therefore, Defendant's Motion to Dismiss Counts I and III of the Fogarty's Complaint will be granted. Fogarty will be afforded leave to amend as to Counts I and III, for alleged adverse actions claimed within the January 5, 2018 EEOC/PHRC complaint.

**d. Retaliation Claim (Count II)**

Fogarty avers that the reductions in his teaching assignments occurred because he complained that Defendant was discriminating against him based upon age. Defendant contends that Fogarty's retaliation claim fails because he has not sufficiently pleaded retaliatory causation. Fogarty argues that he has sufficiently pleaded corresponding adverse actions following his complaints of age discrimination. A prima facie case of retaliation under the ADEA[1] requires a plaintiff to show that (1) he engaged in a "protected employee activity"; (2) he suffered an adverse employment action either contemporaneous with or following the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). The third element has also been described as requiring the plaintiff to sufficiently raise an inference that the protected activity was the "likely reason" for the adverse action. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). Whether

[1] Fogarty pleads a retaliation claim under Title VII, which appears to be a scrivener's error. The Court will assume that Fogarty meant to plead an ADEA retaliation claim, as Title VII covers race, color, religion, sex and national origin, and the subject of the Complaint is limited to age. Under either ADEA or Title VII retaliation, the elements are the same.

there is a causal nexus between the protected activity and the adverse action is a totality-of-the-circumstances inquiry. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). A plaintiff asserting retaliation may rely solely on temporal proximity between the protected conduct and the adverse action to create an inference of causation, but only if the timing is "unusually suggestive" of a retaliatory motive. *Id.* (quoting *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). Absent such suggestive timing, courts consider "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting" a retaliatory animus. *Id.*

In this case, Fogarty pleads that he informed Professor Harper on February 2, 2017, that he believed he had not been considered for a vacant position due to his age. (ECF No. 1 at ¶ 26). On March 15, 2017, Professor Prescott informed Fogarty that he would be cutting Fogarty's teaching load, and therefore his income, for the 2017/2018 academic year. *Id.* at ¶ 28. Subsequently, on May 10, 2017, August 7, 2017, November 29, 2017, and December 4, 2017, Defendant reduced Fogarty's teaching load and income for the 2017/2018 academic year. *Id.* at ¶¶ 29, 33, 35, and 36. Despite the Defendant's argument to the contrary, given the temporal proximity of his complaints of age discrimination and the adverse employment actions, Fogarty has averred a plausible causal link. Such proximity sufficiently pleads support for an inference of plausible retaliatory motive. Therefore, Fogarty has sufficiently pleaded a claim for retaliation based upon the alleged adverse actions from those dates and decisions to reduce his course load. Defendant's Motion to Dismiss, as regards Fogarty's Count II retaliation claims, will be denied.

ORDER

And now this 21st of October 2019, upon consideration of the Defendant's Motion to Dismiss, the Briefs in Support, the Briefs in Opposition, and the relevant Pleadings, it is hereby ordered as follows:

1. Defendant's Motion to Dismiss, as regards any alleged adverse actions on or before June 3, 2016, is granted. The claims for adverse actions, February 24, 2014, April 2016, and June 3, 2016, are dismissed, without leave to amend.

2. Defendant's Motion to Dismiss, as regards claims of alleged adverse actions that occurred on August 29, 2018 and in December 2018, is granted. These claims are dismissed, without leave to amend.

3. Defendant's Motion to Dismiss Counts I and III of Fogarty's Complaint is granted. Counts I and III, age discrimination claims, are dismissed. Fogarty shall be granted leave to leave to amend Counts I and III for those alleged adverse actions that were filed with the EEOC/PHRC and which post-dated June 3, 2016.

4. Defendant's Motion to Dismiss Count II, Fogarty's retaliation claims, is denied.

Any amendment shall be filed on or before November 4, 2019. Defendant shall answer on or before November 18, 2019.

BY THE COURT:

Marilyn J. Horan
United States District Judge